UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/29/2020
```

TRACY MOOD,

              Plaintiff,

   -against-

WESTCHESTER COUNTY, ARAMARK
CORRECTIONAL SERVICES, LLC, CORRECT
CARE SOLUTIONS, LLC, COMMISSIONER
JOSEPH K. SPANO, DEPUTY COMMISSIONER
LEANDRO DIAZ, MANUAL MENDOZA,
ASSISTANT WARDEN ERIC MIDDLETON,
ASSISTANT WARDEN FRANCIS DELGROSSO,
RAUL ULLOA, MEDICAL DIRECTOR, ALEXIS
GENDELL, MEDICAL ADMINISTRATOR,

              Defendants.

19-CV-2017 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tracy Mood ("Plaintiff" or "Mood"), proceeding *pro se*, commenced this action

pursuant to 42 U.S.C. § 1983 against Westchester County, Aramark Correctional Services, LLC,

Correct Care Solutions, LLC, Commissioner Joseph K. Spano, Deputy Commissioner Leandro

Diaz, Manual Mendoza, Assistant Warden Eric Middleton, Assistant Warden Francis Delgrosso,

Raul Ulloa, Medical Director, Alexis Gendell, Medical Administrator, (together, the

"Defendants") on March 4, 2019. (*See* Complaint ("Compl."), ECF No. 2.) In this action,

Plaintiff alleges religious freedom claims sounding in the First Amendment to the United States

Constitution and inadequate medical care claims sounding in the Eighth and Fourteenth

Amendments to the United States Constitution. (*See id.*)

Before the Court is an unopposed Motion to Dismiss the Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) (the "Motion") brought by Defendants Correct Care Solutions,

LLC, Dr. Raul Ulloa, Medical Director, and Dr. Alexis Gendell, Medical Administrator (collectively, the "Medical Care Defendants").[1]  (*See* ECF No. 38.)  For the following reasons, the Medical Care Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.  Factual Allegations

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

At all relevant times, Plaintiff was a pre-trial detainee at the Westchester County Jail ("WCJ") and a practicing Muslim with diabetes.  (Compl. ¶ 16.)  As a result of his diabetes, Defendants placed him on a "2500 Cardiac diet" through Aramark Correctional Services.  (*Id.* ¶ 17.)  According to Plaintiff, this diet conflicts with his Muslim faith as he is served a daily "snack bag" that contains bologna (*i.e.*, pork), which is forbidden by his faith.  (*Id.* ¶ 18.)  In addition, Plaintiff's meals primarily contain "rice, pasta, noodles, macaroni, and other high in sugar foods."  (*Id.* ¶ 19.)  As a result, Plaintiff's glucose levels "have dangerously increased" and range from 250-300.  (*Id.* ¶¶ 19-20.)  "CCS medical authorities" called Defendants Dr. Gendell and Dr. Ulloa to personally observe Plaintiff's glucose levels, however, Drs. Gendell and Ulloa simply directed him to "stop eating sweets."  (*Id.* ¶ 21.)  Plaintiff alleges that Medical Care Defendants made no further inquiries or testing and did not treat him.  (*Id.*)

---

[1] Defendants Westchester County, Aramark Correctional Services, LLC, Commissioner Joseph K. Spano, Deputy Commissioner Leandro Diaz, Manual Mendoza, Assistant Warden Eric Middleton, Assistant Warden Francis Delgrosso have also been granted leave to file a motion to dismiss, which has not yet been filed.  (*See* ECF No. 48.)

On January 22, 2019, Plaintiff informed the Medical Care Defendants that he was experiencing dizzy spells and blurred vision and an apparent stroke that Plaintiff believes he suffered but "managed to recover from without medical assistance" while the Medical Care Defendants "took no action." (*Id.*) Plaintiff avers generally that Medical Care Defendants, among others, were not qualified or authorized to create the aforementioned "2500 Cardiac/Muslim diet." (*Id.* ¶ 26.) As a result of said diet, Plaintiff "has become extremely weak as he now suffers from fatigue, dizziness, blurred vision, drowsyness [sic], swollen feet, and legs," which interferes with his daily activities. (*Id.* ¶¶ 27-28.)[2]

## II.   LEGAL STANDARD

### a.   12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare

---

[2] The remainder of Plaintiff's allegations relate to the provision of his food, which allegations are directed at the other defendants and not the Medical Provider Defendants.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

Where a Plaintiff fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited. In such a situation, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000). As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* at 322. "If a complaint is sufficient to state a claim on which relief can be granted on its face, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Accurate Grading Quality Assur, Inc. v. Thorpe*, No. 12 Civ. 1343 (ALC), 2013 WL 1234836, at *5 (S.D.N.Y. Mar. 26, 2013).

### b.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Liberally construed, Plaintiff's complaint asserts, as to the Medical Care Defendants, causes of action under the Eighth and Fourteenth Amendments for deliberate indifference, for allegedly failing to treat his medical condition; and, as to Correct Care Solutions, LLC, supervisory liability.  (*Id.* ¶¶ 39-47.)  For the reasons stated below, the Court finds Plaintiff's pleading to be sufficient as to the deliberate indifference claim but insufficient as to the supervisory liability claim.

### I.   Deliberate Indifference Claim

Because Plaintiff was a pretrial detainee at the time, his conditions of confinement claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *See, e.g., Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  To set forth a conditions-of-confinement claim under the Fourteenth Amendment, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *See Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL

3117508, at *6 (S.D.N.Y. June 25, 2018). The deliberate indifference test for a pretrial detainee

contains an objective prong and a subjective prong. *Darnell*, 849 F.3d at 29.

### a. Objective Prong

The objective prong requires that the "deprivation at issue be, 'in objective terms,

sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9

(S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in

combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at

30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead,

'the conditions themselves must be evaluated in light of contemporary standards of decency.'"

*Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). As relevant here, the

Constitution "require[s] that prisoners be served 'nutritionally adequate food that is prepared and

served under conditions which do not present an immediate danger to the health and well being

of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting

*Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)). For

instance, courts have held that "allegations that a prisoner was served food contaminated or

tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test.

*See Crispin v. Westchester Cty.*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June

10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y.

Mar. 12, 2019)).

Here, Plaintiff has satisfied the objective prong. Plaintiff has alleged that he suffers from

a serious medical condition, diabetes, which requires careful monitoring of blood glucose levels.

He has alleged that the meals served to him are not nutritionally adequate insofar as they have

caused his blood glucose levels to rise to dangerously high levels, and have caused him to suffer

several adverse affects affecting his daily activities, including extreme weakness, fatigue, dizziness, blurred vision, and drowsiness.  The "continued failure to provide a diabetic inmate with a medically appropriate diet, resulting in a decline in his health" is constitutionally impermissible.  *Rush v. Fischer*, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), *aff'd sub nom. Rush v. Canfield,* 649 F. App'x 70 (2d Cir. 2016) (citing *Johnson v. Harris*, 479 F. Supp. 333, 336–37 (S.D.N.Y. 1979) (Weinfeld, J.)).[3]  In *Johnson*, the diabetic plaintiff was served meals consisting largely of starchy foods: "bread, potatoes, rice, beans (and) cake." 479 F. Supp. at 335.  The court found that the prison had "force[d] him into the draconian choice between jeopardizing his health by eating, or suffering, like Tantalus, the punishment of being shown food that he cannot eat. We hold that the Constitution does not permit prison officials to force that choice upon this prisoner." *Id.* at 337.  The Court adopts the reasoning set forth in *Johnson*.

### b.  Subjective Prong

Under the subjective or "*mens rea*" prong, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.  Importantly, even after *Darnell*, it is well-settled that "negligence, even

---

[3] See *also Crispin v. Westchester Cty.*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 & n.7 (S.D.N.Y. June 10, 2019) (finding plaintiff satisfied the objective standard of a conditions of confinement claim based on allegations concerning the food served at WCJ and collecting cases concluding the same).

if it constitutes medical malpractice, does not, without more, engender a constitutional claim."
*Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25,
2019); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process
requires proof of a *mens rea* greater than mere negligence.").

Thus, "following *Darnell*, the Court is faced with a difficult task. It is called upon to
determine, without the benefit of medical expertise, whether an objectively reasonable person in
Defendant's position would have known, or should have known, that Defendant's actions or
omissions posed an excessive risk of harm." *Davis v. McCready*, 283 F. Supp. 3d at 120.  Here,
Plaintiff alleges that the Medical Care Defendants placed him on the "2500 Cardiac/Muslim
diet" and further alleges that the diet exacerbated his diabetes, resulting in the dangerously high
glucose levels and the adverse physical effects described above.  Plaintiff informed Drs. Gendell
and Ulloa about these symptoms, and they "personally observe[d] the increased [glucose] levels"
but "made no further inquiries" and "took no action." [4]  (Compl. ¶ 21.)

The Medical Care Defendants contend that the facts do not indicate the treatment
Plaintiff received was "unreasonable or ineffective" or "motivated by improper incentives."  *See
Gomez v. Westchester Cty.*, No. 12-CV-6869 RA, 2015 WL 1054902, at *11 (S.D.N.Y. Mar. 10,
2015), *aff'd sub nom. Gomez v. Cty. of Westchester*, 649 F. App'x 93 (2d Cir. 2016).  The Court
disagrees.  At the very least, Plaintiff has alleged that the diet he was prescribed was
"ineffective" in that his condition materially worsened and affected his daily activities.  Plaintiff
does not allege "mere disagreement over the proper treatment." *Chance v. Armstrong*, 143 F.3d
698, 703 (2d. Cir. 1998).  Rather, Plaintiff alleges he received no treatment at all for his elevated

---

[4] Medical Care Defendants also argue that Plaintiff has failed to allege the Medical Care Defendants' personal
involvement.  But the allegations in this Complaint – in which the medical professionals failed to treat or otherwise
follow up after observing the aggravation of a serious medical condition – distinguish this case from *Salgado v.
DuBois*, No. 17-CV-6040 (NSR), 2019 WL 1409808, at *8 & n.4 (S.D.N.Y. Mar. 28, 2019).

glucose levels.  Accordingly, at this early stage of the case, the Court will not rule out that a reasonable physician in Drs. Gendell and Ulloa's position may have known, or had reason to know, that Plaintiff's diet and elevated glucose levels posed an excessive risk to Plaintiff's health and safety.  *See Mora v. Hughes*, 238 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) (finding deliberate indifference adequately alleged where doctor "failed to ensure that plaintiff received [proper treatment], and plaintiff suffered "severe symptoms that resulted from his apparently uncontrolled diabetes").

## II.    Claims Against Correct Care Solutions, LLC

To the extent Plaintiff's claims are intended to reach Defendant Correct Care Solutions, LLC ("CCS"), such claims must be analyzed under the standards set forth in *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *see also Carno v. United States*, No. 17 CV 7998 (NSR), 2019 WL 2287966, at *13 (S.D.N.Y. May 28, 2019) ("[L]iability under § 1983 against . . . Correct Care needs to arise through the criteria set out in *Monell v. Dep't of Soc. Servs.* because § 1983 does not invite . . . organizations to assume liability vicariously for the conduct of rogue individuals.").

Under *Monell*, a plaintiff must demonstrate that the organization "itself caused or is implicated in the constitutional violation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  This generally requires plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right."  *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("[A] plaintiff is required to prove: (1) actions taken under color of law; (2)

9

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

official policy of the municipality [or organization] caused the constitutional injury.").  To

establish an official custom or policy, a plaintiff must first allege one of the following:

> (1) a formal policy officially endorsed by the municipality [or organization]; (2)
> actions taken by government officials responsible for establishing the . . . policies
> that caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of those who come
> into contact with the . . . employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec.

21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Second, the plaintiff must establish a "'direct causal link" between the organization's "policy or

custom and the alleged constitutional deprivation.'"  *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d

400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

        The Complaint makes no reference to any formal policy or custom.  Liberally construed,

Plaintiff's complaint might suggest a "consistent and widespread" practice with respect to the

food served at WCJ.  (*See* Compl. ¶ 31 (referencing other food-related lawsuits and "over 100

inmate food related grievances").)  But Plaintiff's claims against Drs. Gendell and Ulloa are

premised not just on food-related grievances, but also medical care necessitated by his diabetes.

As the Complaint is devoid of factual allegations that would plausibly suggest a policy or custom

causally linked to this alleged constitutional violation, it fails to state a cognizable *Monell* claim.

Accordingly, any claims against CCS are dismissed without prejudice.  Plaintiff is granted leave

to replead his claim against CCS to the extent he can provide more specific factual allegations

regarding CCS's relevant customs and policies.  *Cf. Barnes v. United States*, 204 F. App'x 918,

919 (2d Cir. 2006) (summ. order) (recognizing that a *pro se* complaint "should not be dismissed

without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated" (quotations omitted)).

## CONCLUSION

For the foregoing reasons, the Medical Care Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff's claims against Correct Care Solutions, LLC are dismissed without prejudice.  Plaintiff's deliberate indifference claims against Drs. Gendell and Ulloa remain, as well as claims against non-moving Defendants Westchester County, Aramark Correctional Services, LLC, Commissioner Joseph K. Spano, Deputy Commissioner Leandro Diaz, Manual Mendoza, Assistant Warden Eric Middleton, and Assistant Warden Francis Delgrosso.

Plaintiff may file an Amended Complaint consistent with this Opinion, on or before August 28, 2020, should he choose to reassert his claims against CCS that were dismissed without prejudice.  Because Plaintiff's Amended Complaint will completely replace, not supplement, the Complaint, any facts or claims that Plaintiff wishes to remain must be included in the Amended Complaint.  Failure to timely replead may result in dismissal of Plaintiff's claims against CCS with prejudice.  If Plaintiff does not file an Amended Complaint by August 31, 2020, Defendants Gendell and Ulloa are directed to file an answer to the Complaint on or before September 30, 2020.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Medical Care Defendants' Motion to Dismiss at ECF No. 38.  The Clerk of the Court is further directed to terminate Defendant Correct Care Solutions, LLC.  Counsel for the Medical Care Defendants is

directed to mail a copy of this Opinion to *pro se* Plaintiff at his last address listed on ECF and file proof of service on the docket.

Dated: July 29, 2020                           SO ORDERED:
       White Plains, New York

                                               _____
                                               NELSON S. ROMÁN
                                               United States District Judge

12